UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL BURKETTE,

        Plaintiff,

v.

TODD WARING, in his individual capacity;
KENNETH HURST, in his individual
capacity; KEVIN WEBER, in his individual
capacity; and COUNTY OF OAKLAND,

        Defendants.

_____/

Case No. 10-10230

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT OAKLAND COUNTY'S MOTION
TO PRECLUDE PLAINTIFF FROM USING ANY INFORMATION OR EVIDENCE
CONTAINED IN HURST/WEBER/WARING CONFIDENTIAL SPECIAL UNIT
INVESTIGATION FILES AT TRIAL [20] AND REMAINING DEFENDANTS'
CONCURRENCE [24]**

      This § 1983 action comes before the Court on Defendant Oakland County's motion

seeking an order precluding Plaintiff Paul Burkette from using at trial any information or

evidence contained in Hurst/Waring/Weber confidential Special Unit Investigation ("SUI")

file. Defendants Hurst, Waring, and Weber concur in Oakland County's motion. For the

reasons stated below, this Court GRANTS Defendants' motion.

**I.    Background**

      Burkette's counsel, Wolfgang Mueller, obtained the SUI file at issue here pursuant to

a July 5, 2007 Stipulated Protective Order entered by Judge Victoria Roberts in an

employment dispute alleging gender discrimination. The Judge Roberts lawsuit was

brought by Jane Boudreau, a former Sergeant with the Oakland County Sheriff's Office.

*See Boudreau v. Oakland County, et al.*, Case No. 07-10529. That lawsuit had nothing to do with Defendants Hurst, Weber, or Waring; but, nonetheless, discovery in the *Boudreau* lawsuit included the SUI file addressing the conduct of Defendants Hurst, Waring, and Weber with regard to the arrest of the Plaintiff in this lawsuit as well as their conduct on other occasions as well. (Oakland Cty. Br. at 4.)

### A. Judge Roberts' *Boudreau* Employment Dispute

In Judge Roberts' case, Plaintiff Boudreau claimed that her termination in March 2006 was based in part on her gender and that similarly situated males who committed the same or more egregious rule violations were treated more favorably in violation of Title VII and Michigan's Elliott-Larsen Civil Rights Act. To facilitate discovery, the parties in Judge Roberts' case entered into a Stipulated Protective Order. The *Boudreau* Protective Order identified all Oakland County Sheriff's Department internal documents and written and videotaped investigations, among other items, as "Confidential;" limited their access and use to the parties' attorneys and their retained experts; and precluded everyone involved in the lawsuit from publicizing, referring, or communicating any confidential information in any way to any other person or entity "other than in connection with the discovery and preparation of trial [in Judge Roberts' case] or appeal of th[at] action." (7/5/07 *Boudreau* Protective Order.) A May 28, 2010 Stipulated Amendment to the *Boudreau* Protective Order further provides that after termination of the *Boudreau* action, "Confidential Material submitted to the Court shall not be returned to either party and will remain under seal and out of the public file." (5/28/10 *Boudreau* Stip. Am.)

### B. This Court's § 1983 *Burkette* Lawsuit

On January 19, 2010, this lawsuit was filed by the same Plaintiff's counsel in Judge

Roberts' case.  This § 1983 action, brought on behalf of Paul Burkette, was filed against Oakland County and Officers Waring, Hurst, and Weber in their individual capacities.  The First Amended Complaint alleges that (1) Defendants Waring and Weber violated Burkette's Fourth Amendment rights by seizing and arresting him without probable cause on January 30, 2007; (2) Defendant Waring violated Burkette's Fourth Amendment rights that same day by tasering him after he fled from an allegedly unlawful traffic stop and thus used excessive force; (3) Defendants Waring, Weber, and Hurst (who was not present during the traffic stop, arrest or tasering) conspired to violate Burkette's Fourth Amendment rights by agreeing to make an unlawful traffic stop, to arrest him without probable cause, and to use excessive force on him; (4) Defendant Oakland County is subject to municipal liability because its policy, practice and custom of inadequate training concerning traffic stops and seizures of citizens  was the moving force behind the individual Defendants' conduct that violated Burkette's constitutional rights; (5) Defendants' unconstitutional conduct caused Burkette to be prosecuted and imprisoned for a parole violation without probable cause; and (6) Defendants violated Burkette's right to a fair trial as guaranteed by the Sixth Amendment.

The events giving rise to the *Burkette* lawsuit occurred on January 30, 2007.  At around 9:00 p.m., Burkette alleges that two uniformed officers, Defendants Oakland County Sheriff Deputies Waring and Weber, were in a marked police car and pulled him over while he was driving in the City of Pontiac, located in Oakland County, Michigan.  (Am. Compl. ¶ 12.)  Burkette, who was out on parole from the Michigan Department of Corrections for a prior conviction, pulled his vehicle into a residential driveway, exited his vehicle, and then began to run away from his vehicle.  Burkette further alleges that, suddenly and without

warning, Defendant Waring tasered him, knocking him to the ground. Defendant Weber searched Burkette and found five .38 caliber bullets in his right front coat pocket. Burkette was arrested and charged with three counts related to being a felon in possession of a firearm and one count of driving with a suspended license. (*Id.* at ¶¶ 14-15.)

On February 5, 2007, after being in the Oakland County jail for five days, Burkette was served with a Notice of Parole Violation Charges for his alleged conduct on January 30, 2007. That Notice described parole condition violations including (1) allegations that Burkette attempted to flee and elude the police; (2) that he possessed a handgun on his person; (3) that he possessed five .38 caliber bullets on his person; and (4) that he was operating a motor vehicle while his license was suspended.

On March 8, 2007, the criminal firearm-related charges against Burkette were dismissed by Judge Preston Thomas, 50th District Court, Docket No. 07-53495SL. (*Id.* at ¶ 16.) After the criminal charges against Burkette were dismissed, he was returned to the Michigan Department of Corrections as a parole violator. On April 18, 2007, after a formal parole violation hearing, Burkette was found guilty of fleeing and eluding, as well as having five .38 caliber bullets in his possession on January 30, 2007. He was found not guilty of possession of a handgun and driving with a suspended license.

### C. Judge Roberts Sanctions Plaintiff's Attorney for Violating Protective Order

After the *Burkette* lawsuit was filed here in January 2010, Defendant Oakland County filed a motion before Judge Roberts in the *Boudreau* employment dispute arguing that but for the information contained in the confidential files concerning Defendant Oakland County's current and former employees – Todd Waring, Kenneth Hurst, and Kevin Weber

– the § 1983 action pending here would not have been filed. Oakland County further argued that because Plaintiff's counsel had violated the Stipulated Protective Order, he should be sanctioned. Plaintiff's counsel, Wolfgang Mueller, filed an Affidavit in the *Boudreau* matter admitting that:

- he had reviewed the confidential disciplinary files and reports concerning Waring, Hurst, and Weber;

- those files contained information of discipline of two of the deputies in connection with our Defendant, Paul Burkette's arrest in the City of Pontiac on January 30, 2007;

- he contacted Paul Burkette to discuss the facts of his arrest <u>and to determine whether he could be a potential witness in the *Boudreau* employment dispute to establish disparate treatment;</u>[1]

- he did not publicize, communicate or refer in any way to any confidential material during his interview with Burkette;

- during the interview, Burkette expressed his desire to retain Attorney Mueller and to pursue a § 1983 action;

- Attorney Mueller, agreed to investigate Burkette's claim and ultimately agreed to become his attorney in this § 1983 action.

(Mueller Aff., *Boudreau v. Oakland Cty.*, No. 07-10529, Doc. No. 78-3 (emphasis added).)

On February 8, 2010, Judge Roberts issued an Order in the *Boudreau* matter granting Defendant Oakland County's motion seeking to preclude Plaintiff's counsel from using certain confidential information at the *Boudreau* trial. Specifically, Judge Roberts found that Plaintiff's counsel, Wolfgang Mueller, violated the Court's protective order. As a sanction, she precluded Plaintiff from relying on any information contained in the Hurst Confidential Special Units Investigation (SUI) file at the *Boudreau* trial. The Order further stated:

---

[1]Defendant asserts that Paul Burkette was never listed as a witness in the *Boudreau* matter.

> The Court imposes this sanction since Mr. Mueller used information produced confidentially in discovery in this case, in drafting the Complaint on behalf of *Burkette*, in a matter now pending in this Court.

(2/8/10 Order - attached as Ex. 2 to Def.'s motion.)

The *Boudreau* matter pending before Judge Roberts proceeded to trial, resulting in a jury verdict in favor of Defendant Oakland County. Judgment was entered in favor of the Defendant on March 4, 2010.

### D. *Burkette* Lawsuit and Effect of Protective Order Violation

During all of this, the *Burkette* § 1983 litigation was also proceeding here. In fact, this Court recently issued an Opinion and Order in *Burkette* granting in part and denying in part Defendant Oakland County's motion to dismiss Burkette's claims against it. The following § 1983 claims were dismissed: (1) Burkette's claims challenging his underlying parole revocation and subsequent incarceration, and (2) Burkette's Sixth Amendment claim concerning the right to a fair trial. Defendants' motion was denied as to Burkette's remaining claims that: (1) Defendants Waring and Weber violated his Fourth Amendment rights on January 30, 2007 when he was allegedly arrested without probable cause and unlawfully tasered; (2) Defendant Oakland County's policy or custom of inadequate training was the moving force behind the alleged Fourth Amendment violations and thus this municipality is subject liability for those constitutional violations; (3) all Defendants, including Hurst who was not present during Burkette's arrest, conspired to unlawfully arrest Burkette in violation of his constitutional rights; and (4) Defendant Hurst, although not present during Burkette's arrest and tasering, also violated his constitutional rights.

This matter comes before the Court on Defendant Oakland County's motion. The motion was likely filed as a result of Plaintiff Burkette's pending document request seeking

production of all SUI files resulting from Burkette's January 30, 2007 arrest and also seeking production of all documents regarding any discipline of Defendants Waring, Weber, and Hurst. (Pl.'s Resp., Ex. 1, Doc. Req. Nos. 2 and 3.)

## II. Arguments

Defendant Oakland County's motion argues that Plaintiff Burkette should not benefit from the fruits of his counsel's violation of the Protective Order in Judge Robert's case. Oakland County asks that this Court, consistent with Judge Roberts' findings and sanction, preclude Plaintiff's counsel from "relying on any information contained in the Hurst Confidential Special Units Investigation ('SUI') file at trial." (Def.'s Mot., Ex. 2, *Boudreau* 2/8/10 Order.) Specifically, Defendant Oakland County alerts the Court that Plaintiff Burkette's pending document request seeks production of the Hurst SUI file and other documents covered by the *Boudreau* Protective Order and argues that fairness dictates that the same exclusion at trial of evidence wrongfully obtained should be enforced here.

Defendant Oakland County further argues that the requested SUI file and other Hurst/Weber/Waring disciplinary files are not relevant (FRE 402) to the issue of its liability because they relate to an investigation whether the arresting deputies (Waring and Weber) violated any inter-department policies and procedures and rules or regulations and thus addresses the deputies' conduct; not that of Oakland County. Even if relevant, Oakland County argues, the requested SUI file and disciplinary files are more prejudicial than probative (FRE 403) and the SUI file arguably constitutes a subsequent remedial measure that is inadmissible to prove culpable conduct attributable to Oakland County (FRE 407).

Plaintiff responds that Judge Roberts' protective and sanction orders are not binding in this matter; the requested SUI file and disciplinary documents are relevant and are not

7

more prejudicial than probative; and Defendant's FRE 407 argument as to the SUI file is premature.

### III. Analysis

Other than the evidentiary rules, neither side cites any authority in support of their position. As a practical matter, the requested documents will not assist Plaintiff Burkette in establishing his § 1983 claims against Defendants Waring, Weber, and Hurst alleging that he was unlawfully arrested and tasered on January 30, 2007. Whether those deputies were disciplined or not as a result of their conduct on that date lends nothing to the determination whether Burkette's constitutional rights were violated as a result of his arrest and tasering. These documents are, however, relevant to Plaintiff's municipal liability claims against Defendant Oakland County. Oakland County's Rule 402 relevancy argument is unpersuasive. Moreover, absent review of the Hurst SUI file and any disciplinary files concerning Defendants Waring, Weber, or Hurst, this Court cannot determine whether they are more prejudicial than probative (Rule 403 balancing) or whether the Hurst SUI file constitutes a subsequent remedial measure (Rule 407).

Having said this, Defendant's core argument is persuasive – fairness dictates that this Court exclude Plaintiff Burkette's use of the Hurst SUI file at trial to establish his municipal liability claim against Oakland County or any of his § 1983 claims against Defendants Hurst, Weber, or Waring. Such a result would not preclude Plaintiff from establishing any of the claims asserted against these Defendants. Exclusion will not preclude Plaintiff from establishing, as he alleges, that Defendants Weber or Waring unlawfully arrested or tasered Plaintiff on January 30, 2007; that Defendant Hurst also violated his constitutional rights (even though he has not alleged facts concerning what rights were violated by Hurst

8

or how); that Defendants Weber, Waring, and Hurst (who was not present during the arrest and tasering) conspired to violate his Fourth Amendment rights by agreeing to make an unlawful stop, to arrest him without probable cause, and to use excessive force on him; and that Defendant Oakland County is subject to municipal liability because its policy, custom, and practice of inadequate training concerning traffic stops and seizures of citizens was the moving force behind the individual Defendants' conduct that violated Burkette's constitutional rights.

The Court GRANTS Defendant Oakland County's motion and precludes Plaintiff Burkette from using the Hurst SUI file at the trial of this matter. As stated above, neither party provided any case law in support of their opposing positions. The Court's research revealed a Sixth Circuit decision addressing a similar issue. *See Coleman v. Am. Red Cross*, 979 F.2d 1135 (6th Cir. 1992). In *Coleman*, plaintiffs brought an action against the American Red Cross alleging that it had negligently accepted blood from HIV-infected donors. *Id.* at 1136. "After the plaintiffs' counsel violated a protective order by investigating and learning the identity" of the blood donor to an HIV-infected plaintiff, "the district court enjoined the plaintiffs from using the identity to bring a separate action against the donor." *Id.* The plaintiffs appealed, and the Sixth Circuit reversed the district court's sanction – enjoining the plaintiffs from using the identity of the HIV-infected donor to bring a separate action against him – as an abuse of discretion. *Id.* at 1139-40. The Sixth Circuit acknowledged that the federal courts have held that "a district court may enforce its protective orders by enjoining a party from using information in other litigation." *Id.* at 1140 (citing and discussing *Sperry Rand Corp. v. Rothlein*, 288 F.2d 245 (2d Cir. 1961)). The *Coleman* court then distinguished *Sperry Rand*, by observing that the injunction in *Coleman*

9

went too far by barring "not only immediate use of the donor's name in other litigation, but all future use as well" and did not support a decision "permanently bar[ing] a party from using information it has to bring an action against another person." *Id.* at 1140-41. Weighing the competing interests at stake, the *Coleman* court determined that the plaintiffs' "right to litigate their claims against the donor substantially outweigh[ed] the competing interests" in the donor's privacy and the public's interest "in maintaining a safe and adequate blood supply" when "there [was] significant evidence to suggest that the donor's conduct was suspect." *Id.* at 1141. The *Coleman* court observed that, "[i]n some, perhaps most, circumstances, a district court may properly enjoin a party from using the fruits of a discovery violation in another proceeding." *Id.* It then held that the "the unique facts" presented in *Coleman* required a different result and limited its holding.

> Our holding that the district court abused its discretion by denying the Colemans the use of the donor's name in a separate proceeding is limited to the unique facts presented here. Specifically, we reach that result because the injunction effectively forecloses the Colemans from ever bringing an action against the donor and because the Colemans have presented evidence to suggest that such an action would not be frivolous.

*Id.*

The unique circumstances present in *Coleman* are absent here. Thus, as the Sixth Circuit observed in *Coleman*, "the district court may properly enjoin a party from using the fruits of a discovery violation in another proceeding." *Id.* Accordingly, this Court precludes Plaintiff Burkette from using the fruits of his counsel's discovery violation in the *Boudreau* proceeding at the trial in this matter.

## IV. Conclusion

For the above-stated reasons, Defendant Oakland County's motion, along with

Defendants' Hurst, Weber, and Waring's concurrence, is GRANTED. Plaintiff is precluded from using any information or evidence contained in the Hurst/Weber/Waring Special Unit Investigation files at trial.

                    s/Nancy G. Edmunds
                    Nancy G. Edmunds
                    United States District Judge

Dated: August 27, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 27, 2010, by electronic and/or ordinary mail.

                    s/Carol A. Hemeyer
                    Case Manager